THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ARNE SAILS, Defendant-Appellant.

(No. 53719; ▮▮▮▮▮▮▮▮▮

First District—June 3, 1971.

288

Gerald W. Getty, Public Defender, of Chicago, (Clare Hillyard, Assistant Public Defender, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (James Veldman, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Arne Sails was indicted for rape. He was tried without a jury, found guilty and sentenced to the penitentiary for a term of five to twenty years.

On appeal he contends that he did not knowingly and understandably waive a jury trial and that he was not proved guilty beyond a reasonable doubt. He complains of pretrial errors pertaining to his identification and the denial of his motion to produce statements. He also complains of trial errors concerning the restriction of his own testimony and the court's examination of the complaining witness.

In the early afternoon the complainant left an apartment in which she and her sister-in-law were visiting and crossed the street to her own apartment with the intention of picking up a package and returning. The defendant was standing in the vestibule of the apartment building and he inquired about the janitor. She answered his questions and turned to open the inside door. As she did so, he seized her from behind, choked her and asked for money. She replied she didn't have any, begged him not to hurt her, dropped her keys and said: "Here are my keys. You can go up to my apartment and get what you want." He forced her to pick up the keys, threatened her with a knife, told her he would kill her if she screamed and that he intended to rape her. Holding the knife at her head, he instructed her to walk to another door which opened on a hallway on the opposite side of the building from her apartment. He tripped the lock with his knife, told her to go inside and followed after her.

Inside, he told her to undress and lie on the floor. After she removed her underclothing, he got on top of her, demanded that she put his penis in her vagina and said, "If you want to live, you're going to do as I tell you." She did as she was told. He remained with her until he saw a woman entering the vestibule from the outside; he then got up and fled. The complainant gathered her garments and ran screaming upstairs. A man opened an apartment door and she told him what happened and asked him to call the police and her husband.

In the meantime, her sister-in-law became alarmed at her prolonged absence and went to her apartment building to see what had happened. She rang the doorbell in the vestibule and got no response; she called on the telephone and got no answer. She returned to the apartment building a second time, rang the doorbell again and as she was doing so a man whom she later identified as the defendant walked out. She rang the bell a while longer and asked a man who came into the vestibule whether he had seen a girl dressed as the complainant was. He told her that the girl was in his apartment, had been attacked and that he was on his way to call the police.

The two women gave the police almost identical descriptions of the assailant. The complainant, who had been with him ten or more minutes, selected Sails' photograph from three hundred pictures shown to her and,

after his arrest, identified him at a line-up of four similarly dressed men who were of the same general description as to age, height and weight. Her sister-in-law identified him while in court for a preliminary hearing. She picked him out from among twelve prisoners who were seated in a jury box awaiting trial.

At the time of his arrest and at his trial Sails denied the crime. He testified that he had never seen the complainant prior to the line-up at which she identified him.

■■ The defendant's contentions that he was not advised of his right to a jury trial and that he was not proven guilty beyond a reasonable doubt are devoid of merit. In pretrial discussions his attorney advised the court in the defendant's presence that there would be a non-jury trial. When the case was called for trial he was questioned by his attorney as to whether he desired a jury trial. He indicated that he did not and signed a jury waiver after his attorney explained it to him. The court then asked him if he had signed the waiver and if he wanted to be tried "by this court?" He answered that his signature was on the waiver and that he wanted to be tried by the court. This colloquy established his knowing and understanding waiver of a jury trial. He is bound by his own statements and those of his attorney. *People v. Sailor* (1969), 43 Ill.2d 256, 253 N.E.2d 397.

■■ The evidence introduced by the State was more than sufficient to prove the defendant guilty of forcible rape. The arguments advanced that it was not are: the State did not show that the complainant's will to resist was overcome; she did not scream or run away; she was not corroborated by medical testimony, and her description of the defendant, who had a mustache and peculiar teeth, was incomplete.

■■ The defendant threatened the complainant's life and at knifepoint made her disrobe. Resistance is not necessary where it would endanger the life of the victim. (*People v. Strong* (1970), 120 Ill.App.2d 52, 256 N.E.2d 76.) The complainant testified that she hollered when she was accosted in the vestibule and when told that she would be raped, but that the defendant threatened to kill her if she did not stop. An attempt to run away would have been dangerous if not futile. Medical testimony was unnecessary; the issue at the trial was not whether the complainant had been raped but whether the defendant committed the crime. The complainant testified that she informed the police that her assailant had a mustache; she did not mention his teeth because they did not ask. However, in her testimony she described the teeth and said she remembered them well. Although the defendant denied the act, the credibility of the witnesses was for the judge who saw and heard them. A reviewing court, in view of the opportunities for observation available to

the trial judge, will not disturb a guilty finding unless the proof is so insufficient or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. (*People v. Pendleton* (1966), 75 Ill.App.2d 314, 221 N.E.2d 112.) Here, the defendant was identified not by one but by two witnesses: the victim and a witness who saw him leave the building in the midafternoon. This court has held frequently that the testimony of one witness is sufficient to convict. *People v. Marshall* (1966), 74 Ill.App.2d 472, 221 N.E.2d 128.

■■ A number of pretrial motions were made by the defendant. One of these was to suppress the identification testimony of the complainant and her sister-in-law on the grounds that it was induced by improper police procedure and was invalid because he was not represented by counsel. Another motion was for copies of his oral statements which may have been reduced to writing.

■■ The defendant has utterly failed to show that the pretrial identification procedures were conducive to irreparable misidentification. After Sails' arrest the complainant was asked to come to the police station and was told, "We have some fellows * * * we want you to look at them." The natural inference was that the police suspected one of these men might be her assailant. This unavoidable inference does not taint an otherwise fair line-up. (*People v. McIntosh* (1967), 82 Ill.App.2d 90, 227 N.E.2d 76.) The line-up was conducted fairly. It consisted of four men who were of the same color, and generally alike in physical appearance and clothing. No suggestion was made to the complainant who unhesitatingly made an uninfluenced identification upon seeing Sails in person, as she had upon seeing his picture among three hundred other photographs. The absence of counsel at the pre-indictment line-up did not contravene the defendant's constitutional rights. Under Illinois decisions, the presence of counsel is required only at post-indictment confrontations. *People v. Cesarz* (1969), 44 Ill.2d 180, 255 N.E.2d 1; *People v. Palmer* (1969), 41 Ill.2d 571, 244 N.E.2d 173.

The identification of Sails by the complainant's sister-in-law when she saw him seated in a jury box with eleven other men at a preliminary hearing, was also uninfluenced. She recognized him and voluntarily pointed him out. The testimony concerning this identification came from a police officer and complaint is now made that it was hearsay. There was no objection at the time the officer testified and the point will not be considered.

The defendant's motion for written copies of his oral statements was denied by the court. The court, however, granted his motion for the names of witnesses to oral statements and ordered the State to give him copies of written statements and confessions and to have available at the

trial police reports and grand jury testimony. The ruling of the court as to copies of oral statements that may have been subsequently reduced to writing was correct. The statute requires only that copies of written confessions be furnished a defendant. (Ill. Rev. Stat., 1967, ch. 38, par. 114—10.) Moreover, the defendant's protestation that the court's ruling was prejudicial to him is frivolous. No statement by the defendant, oral or written, was introduced or was attempted to be introduced, into evidence; indeed, the defendant's counsel advised the court that none had been made.

■■ The trial errors complained about are two: the defense counsel was unduly restricted in his examination of the defendant and the court was unduly expansive in its examination of the complaining witness. On direct examination the defendant's counsel asked him whether he had any unusual physical characteristics and objections to the questions were sustained. His counsel made an offer of proof. The court then explained that the State's objections had been sustained because of the form of the questions. However, the defense counsel did not rephrase his questions; he dropped that line of inquiry and proceeded to another subject. Although the objections should have been overruled, the defendant cannot sustain a charge of unfairness when he would have been permitted to answer the questions if his counsel had asked them again in a different way.

The court questioned the complainant concerning details of the rape, such as how long the defendant lay on top of her and how long he had been in her presence. These questions, and the few others asked, were a proper exercise of the court's discretion. The defendant, in this non-jury trial, suffered no prejudice from the clarification of the complainant's testimony.

The judgment is affirmed.

Judgment affirmed.

McNAMARA, P. J., and McGLOON, J., concur.