THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES D. GREEN, Defendant-Appellant.

(No. 57365;

First District (5th Division)—October 5, 1973.

974

Frederick F. Cohn, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, (Elmer C. Kissane, James A. Sternik, and William K. Hedrick, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

OFFENSES CHARGED.

1. Arson in violation of section 20—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1967, ch. 38, par. 20—1).

2. Attempt (arson) in violation of section 8—4 of the Code (Ill. Rev. Stat. 1967, ch. 38, par. 8—4).

3. Possession of explosives in violation of section 20—2 of the Code (Ill. Rev. Stat. 1967, ch. 38, par. 20—2).[1]

JUDGMENT

After a jury trial, defendant was found guilty of attempt (arson) and possession of explosives, and was sentenced to ten to fourteen years on the first conviction and fifteen to twenty years on the second, the sentences to run concurrently.

CONTENTIONS RAISED ON APPEAL

1. The trial court erred in ruling that defendant was given the proper *Miranda* warnings.

2. The pipe bomb seized during his initial arrest, the posters seized during his second arrest, and his oral and written statements given after his second arrest should have been suppressed as the fruits of illegal arrests, searches and seizures.

3. Count II of the indictment fails to charge an offense.

4. The court's instruction to the jury defined the offense of possession of explosives in a manner broader than the indictment.

5. Defendant was denied due process when the court denied his request to be informed, prior to its admission, of the contents of the oral statement made to police.

6. The trial court improperly limited cross-examination of Officer Baker by not allowing impeachment by omission.

7. Defendant was denied a fair trial by the improper reference to a shotgun during the direct examination of Officer Baker and during the State's closing argument.

8. Defendant was denied a fair trial by the prosecutor's improperly presenting to the jury evidence of a crucial witness' physical injury.

---

[1] Section 20—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1967, ch. 38, par. 20—1) provides in part:

"A person commits arson when, by means of fire or explosives, he knowingly:

(a) Damages any real property or any personal property having a value of $150 or more, of another without his consent * * *."

Section 8—4 of the Code (Ill. Rev. Stat. 1967, ch. 38, par. 8—4) provides in part:

"A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense * * *."

Section 20—2 of the Code (Ill. Rev. Stat. 1967, ch. 38, par. 20—2) provides in part:

"Whoever possesses, manufactures or transports any explosive compound * * * and either intends to use such explosive or device to commit any offense or knows that another intends to use such explosive or device to commit any offense for which one of the possible penalties is imprisonment in the penitentiary * * * shall be imprisoned in the penitentiary from one to twenty years."

9. Defendant was not proven guilty beyond a reasonable doubt.

10. The prosecutor's final argument was improper and denied defendant a fair trial.

11. Two sentences are improper since the crimes of attempt (arson) and possession of explosives arose out of the same conduct or transaction.

EVIDENCE

At the hearing on the motion to suppress the written and oral statements and the pipe bomb, the following witnesses testified:

*Fred Herr,* for the State:

He is a Chicago police officer. On July 19, 1968, he was driving his car on a routine patrol near the Hartigan Oil Company premises, and he observed a car parked on the street. He saw a male, later identified as Stephen Johnson, walking in an open field approximately one block west of the Hartigan property and about thirty feet from the car. When he was 100 feet from Johnson, he turned on his spotlight. He saw a thin, hair-line reflection which made it appear that Johnson was carrying a rifle. Johnson attempted to conceal the object with his body. He saw Johnson walk to the car and place the object in the trunk. Herr approached the car and ordered the two individuals inside the car, Paul Martin (alias James Anderson) and defendant, to get out. He asked Johnson to identify himself and present proof of ownership of the car, which Johnson did. When asked what he was doing in the field, Johnson first said "nothing" and then that he was "taking a leak." After another squad car arrived, Herr searched the trunk of the car and recovered a pipe bomb. The three men were then arrested. Defendant and Anderson were charged with disorderly conduct and Johnson with possession of explosives.

*Vernon Clifford Baker,* for the State:

He is a Chicago police officer. After investigating a fire reported on the Hartigan Oil Company premises, the police discovered that the pipe bomb recovered from under an oil tanker truck and the pipe bomb recovered from the trunk of the Johnson car were made from the same cold rolled steel, had the same powder source, the same wick source, and the same fuse cap. Upon completing their investigation, including an examination of prior arrest sheets, the police served defendant with a warrant for his arrest at his YMCA hotel room on July 26, 1968. Officer Baker read defendant the *Miranda* warnings of his constitutional rights concerning police interrogation. The officer then seized several posters which were hanging on the walls of defendant's room.

In transit to the police station, defendant told Baker and Officer Sheridan that "they wanted to cause a lot of disturbance, that they

wanted to injure and kill a lot of people, and wanted to cause a lot of property damage and upset the forthcoming Democratic National Convention."

Upon arriving at the police station, Baker again read defendant his full *Miranda* warnings from a card and defendant read the card himself. Defendant then gave a written statement in which he claimed that he had told his two companions he did not want to participate in the fire bombing; that the other two placed the bomb under the fuel tank; and that he was a party to a plan whereby the three pooled their money so that Anderson could make his bond and be set free to pick up the bomb left under the oil tank. Defendant indicated that he wished no part of his oral statement to be included in the written statement and it was not.

*Charles D. Green,* on behalf of himself:

Following his arrest on July 19, 1968, he was released on bail. He gave the police permission to enter his YMCA room at the time of his second arrest, but did not give them permission to seize his posters. He was not orally advised of his *Miranda* rights. He told Officer Sheridan that he was not involved in the attempt to blow up the Hartigan Oil Company. He claims that he was beaten and burned, with a cigarette, by an officer at the police station.

The motion to suppress was denied.

At the trial the following witnesses testified.

*Sergle Jones,* for the State:

He is a night watchman for Hartigan Oil Company. On July 19, 1968, he observed three males running away from one of the tanker trucks. Upon inspection, he discovered that there was a fire under the tanker, that the valve was open, that oil was draining on the ground and burning, and that an unignited pipe bomb and a partially burnt railroad flare were underneath it.

*Fred Herr* and *Vernon Clifford Baker,* for the State, testified to substantially the same facts as they did at the hearing on the motion to suppress.

Five witnesses testified on behalf of defendant that he had a reputation for being a peaceful citizen in the community in which he lived. In rebuttal, the State introduced into evidence, over objection, the posters seized in defendant's hotel room to counteract his character fitness evidence. Defendant chose not to testify.

OPINION

Defendant argues that the trial court erred in denying his motions to suppress oral and written statements allegedly made by him. Officer Baker testified to the following: while defendant was being placed

under arrest at his YMCA room, the officer read his "civil rights card" to defendant, which was admitted into evidence and contained all the proper *Miranda* warnings. Defendant indicated that he understood all parts of the warning. While in transit to the police station, defendant initiated a conversation with Officer Sheridan and then volunteered the oral confession.

■■ Defendant argues that he did not understand that oral statements could be used against him, and in support of this contention he cites Officer Baker's own testimony that defendant indicated he wished his oral statements to be excluded from his written statement, and that the officer complied. He argues that his desire to exclude certain oral statements from the written statement indicates his belief that oral statements could not be used in court against him. Although a heavy burden rests upon the government to prove a waiver of the constitutional privilege against self-incrimination (*Miranda v. Arizona*, 384 U.S. 436), we find that the government has met its burden. First, defendant's desire to exclude certain oral statements from the written statement could as easily be attributable to later feelings of regret for having given the oral statements as to a lack of understanding of his constitutional rights (as he now claims). Second and more importantly, we find that the evidence overwhelmingly shows that defendant was adequately apprised of his right against self-incrimination. Officer Baker testified that defendant was read the *Miranda* warnings card at his YMCA home and indicated his understanding of them only a short while before he volunteered the oral statement to police on his way to the station. We cannot disagree with the trial court's exercise of its function to determine credibility when it decided to believe the testimony of Officer Baker rather than that of defendant. See *People v. Washington,* 115 Ill.App.2d 318, 253 N.E.2d 677.

■■ Officer Baker further testified that upon arriving at the station, he again read the *Miranda* card to defendant, in the presence of Officer Sheridan and the typist; that defendant asked to see the card and "read it over, front and back"; that defendant said he understood everything and wished to make a written statement; and that defendant requested that certain things he said before be excluded from the statement since they "would make him look bad." Defendant contends that since the written statement itself lacks the proper warning of his right to have counsel present at the interrogation, he was denied his rights under *Miranda.* We believe that a general statement to an accused of his right to counsel without informing him of his right to have counsel present at the interrogation is insufficient to satisfy the constitutional requirements set forth in *Miranda v. Arizona.* (See *United States v. Fox,* 403

F.2d 97 (2nd Cir. 1968).) However, in the case at bar, the evidence shows that the police read the full *Miranda* warnings card twice to the defendant and the card clearly states the right to have counsel present during interrogation. Each time he acknowledged an understanding of the warnings, and we note that Officer Baker testified defendant also read the warning card. The trial court found that defendant was given the proper warning and that the right to have counsel present during the interrogation was inadvertently left off the written statement. We find that the State has met its burden and that defendant was properly advised of all his rights.

Defendant also contends that his counsel's attempt to cross-examine Officer Baker on whether he had memorized the *Miranda* card was erroneously disallowed by the court. Defendant seeks to justify the relevancy of the question by arguing that it was intended to ascertain whether the officer would have realized whether he had misstated or misread the warnings to defendant. We find that the objection was properly sustained and that both the written and oral statements were properly admitted into evidence.

■■ Defendant next contends that the pipe bomb seized during his initial arrest near the Hartigan premises and his oral and written statements given after his second arrest at the YMCA should have been suppressed as the fruit of an illegal arrest, search and seizure. Officer Herr testified at the hearing on defendant's motion to suppress that he viewed a male (Stephen Johnson) walking in the deserted premises near the Hartigan fields; that when he was 100 feet from Johnson, he turned on his spotlight; that the light revealed that Johnson was carrying an object which gave off a thin hair-line reflection as a shadow; that Johnson attempted to keep the object shielded from the officer's view by hiding it behind his body as he walked to the car; and that Johnson hastily placed the object in the trunk of the car. The trial court, in denying the motion to suppress, expressly found that Herr reasonably believed Johnson had a rifle, that Johnson was apparently concealing the weapon and the officer could see no barrel. We agree with the trial court that Herr possessed sufficient probable cause to believe that Johnson was committing the crime of Unlawful Use of Weapons (either Ill. Rev. Stat. 1969, ch. 38, par 24-1(a)(4), (concealment of a weapon) or par. 24(a) (7) (possession of a sawed-off shotgun)).[2] The subsequent search of

---

[2] Section 24 of the Criminal Code of 1961 24 provides in part:

"(a) A person commits the offense of unlawful use of weapons when he knowingly:

*   *   *

(4) Carries concealed in any vehicle or concealed on or about his person *   *   *
any pistol, revolver or other firearm

Johnson's car after his arrest was clearly justified. (*Chambers v. Maroney*, 399 U.S. 42; *People v. Erb*, 128 Ill.App.2d 126, 261 N.E.2d 431.) Once the pipe bomb was discovered, the police certainly had probable cause to arrest defendant. The pipe bomb was then properly seized and seizure did not violate defendant's constitutional rights. The motion to suppress the evidence was properly denied.

Defendant next argues that his subsequent arrest at his YMCA home was illegal as a fruit of the illegal first arrest since his name and address for purposes of the second arrest were obtained from the arrest sheet examined in connection with his first arrest. Therefore, the argument concludes, the written and oral statements made by defendant after his illegal second arrest should be suppressed as fruit of the illegality. We need not decide this issue since we have already held that defendant's first arrest was legal, based on sufficient probable cause. In summary, we find that this evidence was properly admitted.

■■ Defendant next argues that the trial court erred in refusing to suppress the posters seized at his YMCA room in which he made his home. His first theory is that the posters, as expressions of defendant's beliefs, were testimonial statements which were introduced into evidence in violation of his constitutional right against self-incrimination. We find that since the posters contained statements made by other persons and not made by defendant, the statements were not testimonial, and therefore, his right against self-incrimination is not in issue. See *Schmerber v. California*, 384 U.S. 757.

■■ Defendant's second theory for suppression of the posters is that since they were seized without a warrant, his fourth and fourteenth amendment rights were violated. Officers Baker and Sheridan testified that after he was arrested defendant requested permission to change clothes in his room. Naturally, the officers followed him into the room. The officer's seizure of the posters was not a search as it comes under the plain view doctrine. Objects falling within the view of an officer who had the right to be in the position to have that view are subject to seizure and may be introduced into evidence. (*People v. Wright*, 41 Ill.2d 170, 242 N.E.2d 180; *Harris v. United States*, 390 U.S. 234.) Furthermore, in *Katz v. United States*, 389 U.S. 347, 351, the United States Supreme Court stated: "For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." Likewise, it was not mandatory that the officer obtain a search warrant. (*Cham-*

* * *

(7) Sells, manufactures, purchases, possesses, or carries any weapon * * * with a barrel less than 18 inches in length * * *."

*bers v. Maroney,* 399 U.S. 42.) We find that the seizure of the posters was fully lawful.

■■ Defendant next contends that Count II (charging attempt arson) of the indictment fails to charge an offense in that it failed to describe the property as stated in the arson statute as either real property or having a value of $150 or more. The recent case of *People v. Williams,* 52 Ill.2d 455, 461, 288 N.E.2d 406, 409, resolves this issue: "in an indictment for attempt, the crime intended need not be set out as fully and specifically as would be required in an indictment for the actual commission of the crime." In the case at bar, Count II referred to "property of Hartigan Oil Company," while Count I referred to "real property of Hartigan Oil Company." We find that the reference in Count II to property was unmistakably a reference to the real property of the company, and that defendant had sufficient notice of the charges against him. Under *Williams,* defendant's contention is without merit.

Defendant next argues that he was denied a fair trial since the court's instruction to the jury defined the offense of possession of explosives in a manner broader than the indictment, thereby permitting the jury to convict defendant of possession of explosives in a manner for which he had not been indicated, in violation of his right to be indicted by the grand jury. Count III of the indictment states:

"On July 19th, 1968, at and within said County Charles Green, Paul Martin otherwise called James Anderson and Stephen Johnson committed the offense of possession of explosives, in that they, had in their possession an explosive compound, with the intent to use said explosive compound to commit the offense of arson ✱ ✱ ✱"

The court instructed the jury on Count III as follows:

"A person commits the crime of possession of explosives who knowingly possesses an explosive compound with intent to use the explosive to commit any offense or knows that another intends to use the explosive to commit the crime of arson.

To sustain the charge of possession of explosives, the State must prove the following propositions:

First: That the defendant or one for whose conduct he is legally accountable knowingly possessed an explosive compound; and

Second: that the defendant or one for whose conduct he is legally accountable intended to use the explosive to commit any offense or the defendant knew that another intended to use the explosives to commit the crime of arson."

■■ Defendant argues that the instructions direct the jury to find the defendant guilty of possession of explosives if they find that he possessed

explosives with an intent to use the explosives to commit *any offense,* while the indictment charges that he possessed explosives with the intent to use them to commit the specific crime of *arson.* However, the only evidence presented regarding use of the explosives tended to show that defendant and his two cohorts (for whose conduct, under the circumstances, the jury could have found him legally accountable) attempted to use the explosives by placing them under an oil tanker, which would clearly constitute intent to commit arson as defined in another instruction given the jury.[3] Since no other evidence of a use of the explosives was presented, we find that the jury could not have been misled by the instruction and were therefore able to fairly apply the instructions given to the facts of the case.

Defendant argues that he was denied due process when the court denied his request to be informed, prior to its admission, of the contents of the oral statement made to police. The relevant statute, Section 114—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1969, ch. 38, par. 114—10),[4] provides for discovery of a list of witnesses to an oral confession, but not of the statement itself. Therefore, the court was not required to compel discovery of the statement. In *People v. Sails,* 133 Ill.App.2d 287, 273 N.E.2d 188, it was stated that the trial judge properly denied defendant's motion for written copies of his oral statements, since such are not made discoverable by statute. We find that defendant's contention is without merit.

■■ Defendant argues that the trial court improperly limited cross-examination by not permitting impeachment by omission on the issue of whether defendant's oral statement, not included in defendant's written statement, was mentioned in the investigating officer's written police report. However, we find that since the defense attorney failed to lay a proper foundation for the impeachment, all of the State's objections to the cross-examination of Officer Baker were properly sustained. During the cross-examination of Officer Baker, who claimed that defendant gave him the oral statement, defense counsel requested the court to mark the officer's police report as Defendant's Exhibit 6. He then asked the witness, "You made a report of your investigation and

---

[3] A person commits the crime of arson who by means of fire or explosive knowingly damages any real property of another without his consent.

[4] Section 114—10(a) provides:
"(a) On motion of a defendant in any criminal case made prior to trial the court shall order the State to furnish the defendant with a copy of any written confession made to any law enforcement officer of this State or any other State and a list of the witnesses to its making and acknowledgment. If the defendant has made an oral confession a list of the witnesses to its making shall be furnished."

arrest of Mr. Green in this case, did you not?" and the witness answered affirmatively. Then defense counsel asked "* * * you did not include anything about his oral statement, did you?" with the State objecting and the court sustaining the objection. Defense counsel made no attempt to establish that under normal circumstances a police report should contain oral statements made by the accused. After establishing this latter fact, the defense attorney would *then* have been correct in asking the officer if he included defendant's statements in the report. The additional step of establishing that police reports normally contain such statements is necessary to the laying of a proper foundation for impeachment. Then if the officer, after testifying that he made out the report and that normally reports should contain such statements, stated that the report did contain the statement in question, defense counsel would be free to attempt impeachment of the officer by drawing attention to the fact that Exhibit 6 (the report) did not contain the statement. We find that since defense attorney failed to lay a proper foundation for impeachment by omission, the trial court properly limited his cross-examination by sustaining objection to his question of whether the report contained the oral statement.

Defendant argues that he was denied a fair trial by the improper reference to a shotgun during the direct examination of Officer Baker and during the State's closing argument.[5] The relevant portion of the direct examination of Baker is as follows:

"PROSECUTOR: I show you, sir. People's Exhibit 18, for identification, and ask you if you ever saw that object.

OFFICER BAKER: Yes, sir.

PROSECUTOR: And where was that?

OFFICER BAKER: This is the gun that Detective Sheridan found in the closet.

* * *

PROSECUTOR: And what is the condition of that gun with regard to the barrel?

OFFICER BAKER: It was sawed off.

DEFENSE ATTORNEY: I object and move the last question and answer be stricken, Your Honor.

THE COURT: The last question and answer?

PROSECUTOR: Testified to the condition of the barrel, Judge.

THE COURT: Overruled."

Although the defense attorney did object to the reference to the gun

---

[5] Actually, defendant's argument discusses the improper admission into evidence of the shotgun, whereas the State never sought its introduction into evidence.

barrel, he did not object to the initial questions directed to Officer Baker concerning the gun. For this reason and because defense counsel utilized the testimony as the subject of extensive cross-examination, and after his motion (made several days later) to strike the testimony was denied, he agreed to the denial. We find no reversible error. See *People v. Dial*, 95 Ill.App.2d 345, 238 N.E.2d 122.

■■ The next question is whether the prosecutor's comment in the closing argument regarding the shotgun was improper. The defendant contends that although the trial court ruled that the shotgun could not be introduced into evidence to rebut defendant's evidence of a peaceful character, nevertheless the prosecutor discussed the shotgun in his closing argument for that very purpose. Whatever adverse effect Baker's shotgun testimony had on the jury it is not likely that the adverse effect was increased by the prosecutor's one-time reference to the shotgun during his closing argument and, we are of the opinion, beyond a reasonable doubt, that although not condoned by this court, it was not so prejudicial as to be tantamount to denial of defendant's right to a fair trial.

■■ Defendant argues that he was denied a fair trial by the prosecutor's improperly presenting to the jury evidence of a crucial witness' physical injury. The relevant portions of the trial proceedings are as follows:

"PROSECUTOR: Now, by the way, Mr. Jones, do you suffer from any physical ailment, with regard to your testifying?
DEFENSE ATTORNEY: Objection.
PROSECUTOR: Judge, I think this is pertinent.
THE COURT: Objection sustained.
PROSECUTOR: I notice it is difficult for you to answer.
DEFENSE ATTORNEY: Objection.
PROSECUTOR: Judge, may I be heard on this?
THE COURT: Objection is sustained. Counsel proceed."

It is relevant that, contrary to defendant's position on appeal, no evidence regarding injuries to the witness was introduced. Instead the trial court properly sustained defense counsel's objection to the prosecutor's inquiry as to Jones' injuries. Therefore, all the cases cited by defendant are distinguishable. (*People v. Nickolopoulos*, 25 Ill.2d 451, 185 N.E.2d 209; *People v. Cunningham*, 73 Ill.App.2d 357, 218 N.E.2d 827; *People v. Carpenter*, 49 Ill.App.2d 101, 199 N.E.2d 457.) These cases and other Illinois cases requiring reversal when evidence of a witness' physical injury is introduced have limited applicability to those situations where witnesses were actually injured by the defendant. Here there has been no evidentiary allegation that defendant caused Jones' injury, or that

he had, in fact, sustained an injury. We cannot say that any prejudice against defendant was created by the prosecutor's questioning to which defense objections were uniformly sustained.

Defendant next argues that he was not proven guilty beyond a reasonable doubt. However, we find that the evidence clearly links defendant to the possession of the explosives and the attempted arson of the Hartigan storage area. Sergle Jones observed three males running away from the fire started under the tanker at about 10:00 P.M. on July 19, 1968. At about 10:45 P.M. that same evening three males, including defendant, were arrested about one block west of the Hartigan area. The pipe bomb discovered under the tanker and the one discovered in the trunk of the car occupied by the three were amazingly similar. Although the evidence is circumstantial, the likelihood that defendant was one of the three males seen running from the tanker was sufficient for the jury's consideration.

Defendant's conviction is further supported by the written statement given by defendant that he was present when his two companions drove up to the Hartigan premises and that he remained in the car while they planted the bomb, not wishing to participate in the crime. To believe that defendant remained in the car, this court would have to believe that after leaving their car, Martin and Johnson were joined by another man, who assisted them in the crime, escaped with them, and vanished before the two returned to the car. The probability of such an occurrence is certainly remote.

■■ A conviction based on circumstantial evidence will be sustained when the evidence is of such a convincing character that it satisfies the jury of the guilt of the accused beyond a reasonable doubt that the defendant committed the crimes of which he is accused. On review, this court will not disturb the jury's finding of guilt unless satisfied from a consideration of all the evidence that there is a reasonable doubt of the defendant's guilt. (*People v. Gavurnik*, 2 Ill.2d 190, 117 N.E.2d 782.) Defendant's conviction is further supported by his oral statement, which was evidence of his intent and motive to commit the crimes. We find that defendant was proven guilty beyond a reasonable doubt of attempt (arson) and possession of explosives.

■■ Defendant further contends it was improper for the prosecutor to comment in his final argument upon defendant's not testifying by referring to testimony of the State's witnesses as "uncontradicted," "undenied," and "undisputed" as this amounted to a violation of his constitutional right against self-incrimination. In *People v. Norman*, 28 Ill.2d 77, 190 N.E.2d 819, the defendant argued that the prosecutor's repetitious use of the term "uncontradicted" during the closing argument vio-

lated the prohibition against commenting on a defendant's failure to testify. The Illinois Supreme Court disagreed, holding that the use of the term "uncontradicted" is not a reference to the defendant's failure to testify but rather to the strength of the State's case, even though defendant was the only one who could have denied the State's testimony. The same court has held in *People v. Burton*, 44 Ill.2d 53, 56, 254 N.E.2d 527, 529, that an appropriate test is determining whether the reference in closing argument was "intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify." We follow *Norman* in holding that the mere fact that the prosecutor employed the words "uncontradicted," "undenied," and "undisputed" does not require reversal. We apply the *Burton* test in holding that in view of the large number of witnesses (seventeen), the length of the trial, and the length of the State's closing argument, the prosecutor's use of those words was intended to emphasize the strength of the State's case and not the failure of defendant to take the stand. See also *People v. Carver*, 77 Ill.App.2d 247, 252-255, 222 N.E.2d 17, 20-21.

■■ Defendant also contends that it was improper for the prosecution to characterize certain of defense counsel's tactics as a "trick" and a "ruse." Although it is improper for the State to make statements about the defense counsel's conduct solely to inflame the prejudices of the jury, we conclude that the statements objected to were either appropriate comments on defense counsel's inability to base a particular theory on the evidence or were not of such magnitude as to justify a reversal. See *People v. Palmer*, 47 Ill.2d 289, 265 N.E.2d 627.

Defendant further contends, that the prosecutor's final argument so misstated the law of accountability as to deny defendant a fair trial. Defendant's theory, supported by his written statement to the police, was that although he was present in the car, he neither participated in the activity of his companions nor aided or abetted them in any way. Defendant claims that the prosecution argued to the jury that even if the jury were to believe defendant's written statements, defendant would be guilty by his mere presence and his failure to report the others to the police. Defendant cites only one case, *People v. Weinstein*, 35 Ill.2d 467, 220 N.E.2d 432, in support of his position. *Weinstein* involved the prosecutor's repeated assertions that defendant had the burden of introducing evidence to create a reasonable doubt of guilt, clearly an improper statement of the law. We find *Weinstein* distinguishable since in the case at bar the prosecutor did not make a clear misstatement of the law in arguing to the jury that defendant's presence together with his prior consent and agreement to associate himself with persons he knew were planning to commit arson, plus his failure to disassociate himself from

those persons, plus his failure to take active measures to notify the authorities, were sufficient to contradict his defense of mere presence. We find no reversible error in this regard.

■■ Defendant's next contention is that the failure of the trial court to sustain an objection to the prosecutor's one-time reference to defendant's intending to cause racial disturbances is reversible error. After the prosecutor's comment, the court immediately admonished the jury to consider only statements supported by the evidence and to disregard those statements not so supported. The reference was not repeated. There was ample evidence of defendant's guilt in the testimony of Jones, the written statement and the oral admission. We find that the prosecutor's comment was insufficient to cause any prejudice against defendant.

■■ Defendant's final objection to the prosecutor's closing agument is that the prosecutor urged the jury to convict defendant based on defendant's political beliefs. We agree with defendant that good reputation of a witness cannot be impeached by proof of particular acts, but only by proving his reputation, in general, to be bad. (See *People v. Anderson*, 337 Ill. 310, 169 N.E. 243.) Therefore, any reliance the prosecutor might have placed on justifying his reference to defendant's posters on the basis of rebuttal to defendant's good reputation evidence is misplaced. However, we find that the reference to defendant's posters is justified in substantiating the State's case that defendant possessed the requisite intent to commit the crimes charged. For example, one of the posters contained the caption, "If America don't come around, America should be burned down." We find no merit in defendant's contention.

■■ In summary, the State's closing argument contained some comments of questionable propriety. However, in the absence of a clear showing that the trial judge failed to control the trial and permitted it to get out of hand so as to raise prejudice against defendant, appellate courts will not disturb the verdict. (*Sarelas v. Lerner*, 94 Ill.App.2d 30, 236 N.E.2d 394; *Bruske v. Arnold*, 100 Ill.App.2d 428, 241 N.E.2d 191.) We find beyond a reasonable doubt that the State's closing argument did not deprive defendant of a fair trial or affect the jury's verdict.

■■ We agree with defendant that the imposition of two concurrent sentences are improper since the crimes of attempt (arson) and possession of explosives arose out of the same conduct or transaction. (See *People v. Whittington*, 46 Ill.2d 405, 265 N.E.2d 679; *People v. Garnes*, 12 Ill.App.3d 210, 298 N.E.2d 399.) Thus, we will vacate the sentence for attempt (arson).

■ Under *People v. Harvey*, 53 Ill.2d 585, 294 N.E.2d 269, the sentencing provisions of the Unified Code of Corrections applies to cases

pending on direct appeal. Possession of explosives is a Class 2 felony under the new code. The maximum term, twenty years, given by the trial court is within the current sentencing provisions. (Ill. Rev. Stat. 1972 Supp., ch. 38, par. 1005—8—1(b)(3).) However, under section 1005—8—1(c)(3) of the Code, the minimum sentence may be no greater than one-third of the maximum. Accordingly, we reduce defendant's sentence to a term of not less than 6⅔ years nor more than twenty years and as so modified is affirmed.

The sentence for attempt (arson) is vacated. The conviction for possession of explosives is affirmed. The sentence for possession of explosives is modified and affirmed.

ENGLISH and SULLIVAN, JJ., concur.