THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STEPHEN JOHNSON, Defendant-Appellant.

(No. 59802;

First District (5th Division)—October 25, 1974.

*Rehearing denied December 3, 1974.*

Paul Bradley and Margaret Maxwell, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court, as modified upon denial of petition for rehearing:

Defendant was indicted for the offenses of arson (Ill. Rev. Stat. 1967, ch. 38, par. 20—1), attempt (arson) (Ill. Rev. Stat. 1967, ch. 38, par. 8—4) and possession of explosives (Ill. Rev. Stat. 1967, ch. 38, par. 20—2). He was found guilty by a jury on the charges of attempt (arson)

and possession of explosives. He was sentenced to terms of not less than 10 nor more than 20 years on the charge of possession of explosives and not less than 10 nor more than 14 years on the charge of attempt (arson), the sentences to run concurrently.

On appeal, defendant contends that (1) the State failed to prove defendant's guilt beyond a reasonable doubt in that it did not prove defendant knowingly possessed an explosive or intended to use it in an attempt to commit arson; (2) the trial court erred in denying defendant's motion to suppress a piece of p'pe found in the trunk of defendant's car; (3) the trial court erred in denying defendant's motion to suppress a pipe and fuse allegedly found in defendant's bedroom; (4) the trial court erred in permitting the State to ask a hypothetical question as to the extent of damage the explosion would cause; (5) the sentencing on both the charge of possession of explosives and attempt (arson) was error in that both arose out of the same course of conduct; and (6) the minimum sentence imposed exceeds that required by the Unified Code of Corrections. The facts are substantially as follows:

At approximately 10 P.M. on July 19, 1968, a night watchman, Surgel Jones, observed three persons running from the vicinity of the storage area of the Hartigan Oil Company, 4856 South Morgan Street, Chicago. Shortly thereafter, Jones observed a small fire directly beneath Hartigan's oil tanker No. 93. He noted that the valve on tanker No. 93 was open, and that oil was draining onto the ground. Jones first attempted to douse the flames with water but only succeeded in spreading the fire. He then smothered it with a cushion. A partially burned flare was found in the vicinity. Jones did not report this occurrence to the police or fire department that night.

Early the next morning, Jones showed the area of the fire to a Hartigan official, Felix Ostrowski. The two men discovered beneath the tanker a length of scorched pipe with a fuse protruding from one end. Ostrowski then called the police, who later identified the length of pipe as a bomb.

Also, on the night of the occurrence, at approximately 10:45 P.M., Sergeant Fred Herr of the Chicago Police Department, on routine patrol, was driving a marked squad car south on Aberdeen Avenue near its intersection with 48th Street. A large vacant lot is located on the southeast corner of the intersection which backs up on the Hartigan Oil Co. yard. At that time, Herr observed a 1966 black Buick parked on the south side of 48th Street, facing east. He also observed defendant walking in the vacant lot about 30 feet from the Buick.

Sergeant Herr flashed his light on defendant and saw a hairline reflection from a shiny, cylindrical object which appeared to be 20 to 24 inches in length and approximately 1 inch in diameter. Defendant turned

abruptly and walked back to his car. He opened the trunk and placed the object in the trunk and locked it. Herr, whose original observations were made from a distance of approximately 100 feet, was about 12 feet from defendant's car at this time.

As Herr approached the Buick, he noticed two other individuals inside the car. He made a call for assistance and then got out of his squad car with his service revolver drawn at his side. He asked defendant for identification, and defendant produced a traffic citation, in lieu of a driver's license, and a car registration indicating the car to be his mother's. Assistance arrived, and the two individuals in the car were ordered out, and they and the car were searched. When defendant was asked for the keys to the trunk, he replied that he had given them to Paul Martin, one of the others in the car. Martin then told Herr that he must have dropped them. Minutes later, the officer found the keys in some grass near the passenger's side of the car. He then opened and searched the trunk and found therein a pipe bomb. Defendant and his companions were taken into custody and formally charged with possession of explosives.

Detective Edward Sheridan testified that 2 days later he and Officer Vernon Baker went to the home of defendant's parents, with whom defendant resided. They went there in the belief that the Johnsons might have had some information regarding Paul Martin, one of those arrested with defendant. The Johnsons were aware that their son was in custody but were uninformed as to the charges which the officers then explained. Sheridan testified that Mrs. Johnson expressed concern as to the possible existence of a bomb in the house and, according to the officer, asked them to look around. Mrs. Johnson testified that the police asked her if they could look around and that she and her husband agreed to let them search but didn't specifically ask them to look for bombs.

In any event, Mrs. Johnson accompanied the officers in the search of the house, where Sheridan testified he found in a bedroom used by defendant a piece of pipe and a length of red fuse which was about 8 or 8½ inches long. Mrs. Johnson testified that no pipe or red fuse was taken from the house but that a short grey firecracker fuse was found in the bedroom. The officers subsequently asked Mrs. Johnson to sign a consent form for the search, which she did voluntarily.

At trial, expert testimony indicated striking similarities between the fuse and the powder found in the pipe bomb under the tanker and the one found in the trunk of defendant's car. Similarities also existed in the style of construction of the two bombs, and the fuse allegedly found in defendant's bedroom was the same type as that used in the two pipe bombs.

Opinion

## I.

■■ We will review the search issues first, as the evidence sought to be suppressed constitutes a major portion of the total evidence against defendant. In this regard, we note that the legality of the search of the trunk of this car was ruled upon by this court in the companion case involving Green, Johnson's alleged accomplice and one of the passengers in Johnson's car. (See *People v. Green,* 14 Ill.App.3d 972, 980-981, 304 N.E.2d 32, 39, *cert. denied,* —— U.S. ——, 41 L.Ed.2d 1143, 94 S.Ct. 3179 (1974).) Defendant acknowledges that fact but contends that the holding in that case was erroneous. We do not agree and affirm our ruling there that the motion to suppress was properly denied. The trial court expressly found that although the officer could not see the barrel, nonetheless he could reasonably have believed that Johnson had a rifle and that Johnson was apparently concealing a weapon. We agree with the trial court that Officer Herr possessed sufficient probable cause to believe Johnson was committing the crime of Unlawful Use of Weapons. See *Green, supra,* at 980-981.

## II.

■■ Defendant next contends that the evidence found in defendant's bedroom (the piece of pipe and the red fuse) should have been suppressed where he did not consent to the search and there was no search warrant. It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is *"per se* unreasonable * * * —subject only to a few specifically established and well-delineated exceptions." (*Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 36 L.Ed 2d 854, 93 S.Ct. 2041; *Katz v. United States,* 389 U.S. 347, 357, 19 L.Ed.2d 576, 88 S.Ct. 507.) One such exception is a search conducted pursuant to consent. (*Bustamonte, supra,* at 219; *Davis v. United States,* 328 U.S. 582, 593-594, 90 L.Ed. 1453, 66 S.Ct. 1256.) When the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effect sought to be inspected. (*United States v. Matlock,* 415 U.S. 164, 171, 39 L.Ed.2d 242, 249-50, 94 S.Ct. 988, 993.) The authority which justifies the third party consent does not rest upon the law of property, with its attendant historical and legal refinements (see *Chapman v. United States,* 365 U.S. 610, 5 L.Ed. 2d 828, 81 S.Ct. 776 (landlord could not validly consent to the search of a house he had rented to another); *Stoner v. California,* 376 U.S.

483, 11 L.Ed.2d 856, 84 S.Ct. 889 (night hotel clerk could not validly consent to search of customer's room)), but rests rather on the mutual right of use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants could permit the inspection in his or her own right and that the others have assumed the risk that one of their number might permit the common area to be searched. *Matlock, supra,* at 171.

■■ In *People v. Nunn,* 55 Ill.2d 344, 304 N.E.2d 81, decided prior to *Matlock,* the Illinois Supreme Court stated a related twofold test of the validity of a search conducted pursuant to a third party's consent. *Nunn* holds, in effect, that the party objecting to the search must have an actual expectation of privacy in the area searched and that that expectation must be a reasonable one.

Synthesizing *Matlock* and *Nunn* is the Illinois Supreme Court's recent decision of *People v. Stacy,* 58 Ill.2d 83, 317 N.E.2d 24. There, the court states at pages 88-89:

> "Although *Matlock* did not adopt the 'expectation of privacy' test of *Nunn,* the results in the two cases are not inconsistent. If one has consented to the 'mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched,' these facts would indicate that the co-occupant has likewise surrendered his expectation of privacy in the property."

Thus, the court recognizes that the *Nunn* requirement that "the person searched must have an actual expectation of privacy and this expectation must be reasonable" (*Nunn, supra,* at 348) is merely the converse of the *Matlock* expression that no right of privacy exists where it is "reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right." *Matlock, supra,* at 171.

Nonetheless, the court goes on to deemphasize the subjective "expectation of privacy" test, stating that such is "irrelevant" and that "the validity of the search * * * is to be judged by the more objective 'common authority' test of *Matlock.*" *Stacy, supra,* at 89.

■■ Applying the "common authority" test to this case indicates the mother had such authority and that her consent to search was sufficient. She and her husband owned the house, and although the son resided there and had his own room, it was freely accessible to the mother at all times. She cleaned it every weekend and changed the linen. Though the son was married, he was not then living with his wife, and there was

no evidence that the door was ever locked or that defendant had ever given his mother instructions to stay out of his room, as was the case in *Nunn*. Thus, we feel that the mother had joint access or control over the room and could consent to the search in her own right. The totality of circumstances indicate her consent was voluntary and the search was therefore valid. (*Bustamonte, supra.*) Whatever that search revealed could properly be admitted and the question of whether the pipe and fuse were found in the room as the officers testified, or not found there as defendant's mother testified, was a matter of credibility only and as such was exclusively within the province of the jury.

### III.

██ Defendant next contends that the State did not prove his guilt beyond a reasonable doubt in that it did not prove that he knowingly possessed an explosive or intended to use it in an attempt to commit arson. At trial, defendant testified that he had picked up a brass tube in a field near Hartigan Oil Co. without knowing that the object was a bomb. He denied placing a bomb at the Oil Co. He testified that on the night he was arrested he had stopped to look for a piece of wire to hold down the hood of his car. He saw three or four people in the field run to a car. One of those people threw something into the field as he ran. Defendant testified he then went to his trunk and obtained a flashlight to look for a wire and to see what had been discarded. He saw that the tube was brass but had not yet examined it when Officer Herr placed his light on him. He then picked up the tube, returned to his car and placed it in the trunk. Yet, when asked by the officer what he was doing in the field, defendant merely answered that he was "going to take a leak."

██ The crime of arson can rarely be established by direct and positive testimony of witnesses who actually saw the fire set. (*People v. Wolf*, 334 Ill. 218, 230, 165 N.E. 619.) The inferences of guilt must be drawn from the surrounding circumstances satisfactorily proved. (*Wolf, supra*, at 230.) A court of review should not disturb the verdict of a jury unless the verdict appears to have been the result of passion or prejudice or unless the evidence is so unsatisfactory as to warrant a reasonable doubt of guilt. (*Wolf, supra*, at 230.) Where the evidence is merely conflicting, the credibility of the witnesses and the weight to be given their testimony is a question for the jury, and the reviewing court will not substitute its judgment for that of the jury. (*People v. Lobb*, 17 Ill.2d 287, 294, 161 N.E.2d 325.) Here, the jury had more than ample evidence from which to deduce that defendant had committed the crimes of attempted arson and possession of explosive devices. The second pipe bomb found

in the trunk substantially similar to the one found under the tanker provided a sufficient nexus with the crime for the jury's consideration. They could properly have considered the p'pe and fuse found in defendant's room as rebutting defendant's explanation of his having found the pipe bomb in the field. After an examination of the entire record, we are satisfied that the verdict is supported by the evidence.

## IV.

■■ Defendant next objects that the trial court erred in permitting the State to ask a member of the Bomb and Arson Squad a hypothetical question concerning the extent of damage that would have been caused had the bomb gone off. The arson statute (Ill. Rev. Stat. 1973, ch. 38, par. 20—1) provides:

> "A person commits arson when, by means of fire or explosive, he knowingly:
>
> (a) Damages any real property, or any personal property having a value of $150 or more, of another without his consent;
> * * *."

As stated in *People v. Helm*, 9 Ill.App.3d 143, 148, 291 N.E.2d 680, 684:

> "The reference to the $150 limitation is clearly stated in the disjunctive and applies *not* to real property but only to personal property. Nor does the $150 limitation relate to the *amount* of damage done but rather to the *value* of the item damaged."

■■ The arson indictment charged defendant with damage to the real property of the Hartigan Oil Co. The attempted arson indictment merely charged that defendant attempted to damage the *property* of Hartigan Oil Co. It was thus incumbent upon the State to show that the arson envisaged damage to real property or to personalty having a value in excess of $150. We believe this requirement was met by evidence that the explosion would have damaged the permanent storage tanks in the area, *i.e.*, real property.

■■ Although proof of damage to realty or to personal property having a value in excess of $150 was proper, the extended inquiry into the possible explosion of the fumes in the permanent storage tanks and the ensuing damage that such explosion might have caused was unwarranted. However, objection was properly made and sustained, and we are of the opinion that any error in the prosecutor's further inquiry as to the extent of damages could only minimally prejudice the defendant, if at all, since his defense denied *his* commission of the act, claiming that those he allegedly saw in the field must have started the fire under the tanker. He did not attempt to negate the testimony that a large explosion and fire would result nor did it matter to his theory of the case. Thus, we

feel that any error was not prejudicial to defendant and certainly was not such error as would require reversal.

## V.

■■ Defendant finally contends that the imposition of two concurrent sentences is improper, since the crimes of attempt (arson) and possession of explosives arose out of the same conduct or transaction. We agree with this contention. See *People v. Whittington*, 46 Ill.2d 405, 265 N.E. 2d 679; *People v. Green*, 14 Ill.App.3d 972, 304 N.E.2d 32, *cert. denied*, —— U.S. ——, 41 L Ed 2d 1143, 94 S.Ct. 3179 (1974); *People v. Garnes*, 12 Ill.App.3d 210, 298 N.E 2d 399.

Since possession of explosives is the more serious of the two offenses, 1 to 20 years for the Class 2 felony as opposed to 1 to 10 years for the Class 3 felony of attempt (arson), the judgment of conviction on the indictment for attempt (arson) must be reversed. See *People v. Lilly*, 56 Ill.2d 493, 309 N.E.2d 1; *Green, supra,* and *Garnes, supra.*

## VI.

■■ We note also that on the charge of possession of explosives, defendant was sentenced to not less than 10 nor more than 20 years. Possession of explosives is a Class 2 felony. (Ill. Rev. Stat. 1973, ch. 38, par. 20—2(b).) Under the Unified Code of Corrections the permissible maximum sentence for a Class 2 felony shall be any term in excess of 1 but not exceeding 20 years. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(b) (3).) In addition, the minimum sentence is 1 year, unless the court sets a higher term which, in any event, may not exceed one-third of the maximum. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(3).) The Unified Code of Corrections applies to cases pending on appeal. (*People v. Chupich*, 53 Ill.2d 572, 295 N.E.2d 1; *People v. Harvey*, 53 Ill.2d 585, 294 N.E.2d 269.) Therefore, defendant's minimum sentence here must be reduced to one-third of the maximum. Accordingly, we reduce defendant's sentence to a term of not less than 6⅔ years nor more than 20 years.

Furthermore, defendant should be accorded credit for time spent in custody as a result of the instant charges. The Unified Code so provides. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—7(b).) Although it would appear that such credit could more conveniently be computed and allowed by the Department of Corrections, it has been the practice of some trial judges to compute and allow this credit and to amend the *mittimus* accordingly. We believe that it does not matter how it is accomplished, so long as the credit is given as required.

It appears also that after defendant's arrest, but before his trial on

the instant charges, he was tried in Indiana on another charge and served some time in prison there. It is indicated that he was released from his imprisonment there to be tried here. We have not been informed as to whether any portion of his Indiana sentence remains to be served. However, if there is an unexpired sentence in Indiana, the trial court here may, in its discretion, (1) order his sentence here to be concurrent with the prior sentence in Ind'ana; and (2) order that any time served on the unexpired portion of the Indiana sentence, prior to his return to Illinois, be credited on his sentence here (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(f)).

For the reasons given, the judgment is reversed as to the conviction of attempt (arson); as to the conviction of the offense of possession of explosives, the sentence is modified to a term of not less than 6 years 8 months nor more than 20 years and, as modified, the judgment is affirmed; and the cause is remanded to the trial court to provide for sentence credit or credits as set forth herein.

Reversed in part.

Affirmed as modified, in part.

Remanded for consideration of sentence credit.

DRUCKER and LORENZ, JJ., concur.