*In re* RICKY SALYER, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* RICKY SALYER, Respondent-Appellant.)

Third District   No. 76-99

Opinion filed January 7, 1977.

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward P. Drolet, State's Attorney, of Kankakee (James E. Hinterlong and Robert M. Hansen, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:
This is an appeal by a minor, Ricky Salyer, from a proceeding in the Circuit Court of Kankakee County, on a petition for delinquency, as a

result of which defendant was made a ward of the court and ordered committed to the Department of Corrections. On appeal in this court, the sole issue raised by the minor is whether the trial court erroneously ruled that respondent's mother validly consented to a search of the bedroom used by the minor in the home owned by the mother.

On September 5, 1975, a petition for delinquency was filed in the Kankakee County Circuit Court asking that respondent Ricky A. Salyer be adjudged a ward of the court. The petition alleged that respondent, aged 15, had committed the offenses of theft of property over $150 in value, unlawful possession of cannabis, possession of firearms without an owner's identification card, unlawful possession of hypodermic syringes, and unlawful possession of a controlled substance. The controlled substance allegation was subsequently dismissed on the State's motion. Following an adjudicatory hearing, the trial court found that a prima facie case had been made as to the remaining counts, and declared the respondent Ricky Salyer delinquent. After a dispositional hearing, respondent was ordered committed to the Department of Corrections as we have noted. He was placed on one year's court supervision for driving without a valid driver's license, an offense not alleged by the State, but to which respondent pleaded guilty. The Public Defender represented respondent throughout the proceedings.

The physical evidence introduced at the adjudicatory hearing included bags of marijuana, two hypodermic syringes in a matchbox, an over and under shotgun-rifle, a microscope, and two bunsen burners, all discovered in a search of the bedroom occupied by respondent. There was also introduced into evidence a triple beam scale, which was found in the basement of the home in which respondent resided.

The evidence discovered in the bedroom occupied by the respondent was the subject of a motion to suppress. At the hearing on the motion, prior to the adjudicatory hearing, testimony was taken from respondent Salyer and his mother Cheryl Salyer, and a Village of St. Anne police officer. The police officer related that he received a call from Mrs. Salyer, reporting her automobile missing, at 12:27 a.m. on September 4, 1975. While the officer was interviewing Mrs. Salyer on her front porch, he observed the missing car proceeding down a nearby street. He then pursued and stopped the automobile. The respondent Ricky Salyer had been driving the car and was arrested for driving without a valid driver's license and for a curfew violation.

After the minor Salyer was transported to the County Detention Center, his mother informed the officer that she had found a white canvas bag, which she suspected contained marijuana, in the rear seat of her automobile. Mrs. Salyer then asked the officer to obtain a search warrant for a search of her son's bedroom. The officer told her that a search

warrant would not be necessary and had her sign a search waiver. The officer, Mrs. Salyer and a neighbor lady then proceeded into the premises. Mrs. Salyer told the officer that the door would have to be broken into because her son kept it locked. When they arrived at the door, however, they found a combination lock hanging open on the door, and this lock was removed and they entered the room. A search was conducted which produced the items of physical evidence to which we have referred. The officer was also asked to search the basement of the Salyer house which respondent kept locked. The basement key was obtained and the basement was searched and the triple beam scale was found there.

The mother of respondent, Cheryl Salyer, confirmed in her testimony that the search of the bedroom occupied by her 15-year-old son was conducted without a search warrant but with her consent. She testified that she was a divorcee and considered herself the head of the household, consisting of herself, respondent and four other children. She testified that respondent was the only family member who had a bedroom occupied by him alone. She stated that he kept his room locked with a combination lock on the outside and an inside lock. As a result, it was necessary for Mrs. Salyer to knock to gain admittance to respondent's bedroom. Respondent cleaned his own room and brought his laundry out of the room. The only purpose for which his mother would normally enter the room would be to ask her son a question. She stated she had been in the room once or twice in the 3-month period preceding the search.

Mrs. Salyer was paid support money by her ex-husband. She testified that, although there was no formal arrangement between her and the respondent for the payment of any rent, respondent did give her some money to pay utility bills or house rent, when she needed it and when respondent had it. He had given his mother about $200 for these purposes during the preceding summer. Respondent had his own spending money from a summer job and bought his own clothes and most of the furnishings in his bedroom. Mrs. Salyer testified that she had the only key to the house, since she had not "gotten around" to having any other keys made. The respondent did not pay for food.

Respondent testified that he kept his bedroom locked, and that the combination of the lock was known only to him. He had recorded the combination, among nine other false numbers, on a board above the door. In the month of April 1975, respondent and his mother had argued and his mother had ordered him to leave. He did so, but returned to his mother's house that same night. On the night preceding his early morning arrest, respondent had left his bedroom about 10 p.m. He stated that, to preclude having to turn on the light to reopen the bedroom lock and possibly disturbing his mother, he simply "pushed up" the lock to make it appear locked, without actually locking it.

After the trial court had considered written and oral arguments of counsel, the court ruled against respondent's motion to suppress. In holding that the mother's consent validated the search, the trial court stated that the wording of the Constitution and the search and seizure clause prohibits "unreasonable" searches and that "unreasonable" as a standard must be looked at with respect to the particular facts. The trial court stated, "We would rather presume that parents have the right to consent to the search of their children's property, that in this area of juvenile rights, we have not gone quite so far as to say that a juvenile has the right to set off a corner of his parent's home and say that is mine and you have no right to consent to the search." He further stated that even though the mother had granted her son a certain degree of independence, despite his age, the ultimate authority was still with her.

At the subsequent adjudicatory hearing, the parties stipulated that the State's exhibits included over 30 grams but less than 500 grams of cannabis. Testimony of the principal and a chemistry teacher at the high school in St. Anne established that among the items discovered in the search of respondent's bedroom were various properties stolen from the school. The State also established that respondent had not been issued a firearm owner's identification card for the weapons seized from his room.

As we have noted, the sole issue raised by respondent on appeal is the validity of the search of the bedroom which was conducted with the consent of the mother. Respondent does not, on appeal, contest the search of the basement.

■■ In support of the contention made by respondent, respondent cites *People v. Nunn* (1973), 55 Ill. 2d 344, 304 N.E.2d 81. In *Nunn*, a 19-year-old defendant was involved. In that case, his room had been searched with the consent of his mother. About 10 to 14 days before the search, the defendant had moved out of the house, locked the door of his room, and had instructed his mother to allow no one to enter. The Illinois Supreme Court there, relying principally on *Katz v. United States* (1967), 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507, had held that defendant had a reasonable expectation of privacy and that this reasonable expectation was afforded protection by the rights granted by the Fourth Amendment. The court concluded in that case that no valid waiver had been made.

■■■ In *People v. Stacey* (1974), 58 Ill. 2d 83, 317 N.E.2d 24, the Illinois Supreme Court again considered searches consented to by third persons, and the court pointed out that subsequent to their decision in *Nunn*, the United States Supreme Court on February 20, 1974, rendered its decision in *United States v. Matlock*, 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988. In the *Matlock* case, the United States Supreme Court considered a case where defendant was arrested in the front yard of a house in which he lived along with a Mrs. Graff. The officers made a

search with the consent of Mrs. Graff without a search warrant. The United States Supreme Court concluded that Mrs. Graff had "common authority" in the premises and could consent to a search. The Illinois Supreme Court concluded in *Stacey* that defendant's subjective "expectation of privacy" is irrelevant and the validity of the search in the case before the court was to be judged by a more objective "common authority" test of *Matlock*. In the *Stacey* case, the wife of defendant surrendered defendant's bloody shirt where a murder charge was pending against defendant and the police requested surrender of the shirt without having obtained a search warrant. The court stated that permission to search was obtained from a third party who possessed common authority over the premises or could validly consent to a search of premises or effects over which the person possessed common authority. The court there stressed that common authority rests on mutual use of property by persons generally having joint access or control for most purposes so that it is reasonable to recognize that any of the co-inhabitants has the right to permit inspection in his own right, and that the others have assumed the risk that one of their number might permit the common area to be searched.

While we have noted the *Nunn* case and the *Matlock* case as showing approaches taken in other cases where a person other than a defendant consents to a search, we believe that the cause before us involves still a further consideration.

Respondent's mother possessed authority superior to that of her son, over the room which he occupied. He was a 15-year-old child, as opposed to a 19-year-old defendant in the *Nunn* case. Illinois law imposes serious burdens on parents of minor children. Under Illinois law, a parent, having custody of a minor child, has certain duties and obligations, and liabilities, also, with respect to such child under the age of 18. Under sections 131 and 132 of the Probate Act (Ill. Rev. Stat. 1975, ch. 3, pars. 131 and 132), persons under the age of 18 are considered minors and parents generally are entitled to the custody of the person of their minor children. Under the Parental Responsibility Law (Ill. Rev. Stat. 1975, ch. 70, par. 51 *et seq.*), liabilities are imposed upon a parent for actual damages for wilfull or malicious acts of unemancipated minors who reside with the parent. The School Code of 1961 (Ill. Rev. Stat. 1975, ch. 122, par. 26—1) mandates generally that any person having custody of a child between the ages of 7 and 16 shall cause such child to regularly attend school. The Child Labor Law (Ill. Rev. Stat. 1975, ch. 48, par. 31.1, *et seq.*) regulates child labor, and section 19 of the Child Labor Law (Ill. Rev. Stat. 1975, ch. 48, par. 31.19) imposes a penalty upon any person having custody of a minor, who permits or suffers such minor to work in violation of the statutory proscriptions. The Juvenile Court Act (Ill. Rev. Stat. 1975, ch.

37, par. 701—1 *et seq.*) has several procedures, including those utilized in this case, for control and direction of minors.

■■ We believe that there is implicit in the rights and duties imposed upon a parent, the right to exert parental authority and control over a minor son's surroundings and that such implied right to control obviously includes a room in the home of the mother. We also conclude that the mother had at least common authority as to the room occupied by her 15-year-old child. The record discloses that the son had been in the sole occupancy of the room from the time he was 10 years of age, and that the same or similar conduct or arrangements had been involved from that period until the time considered in the instant case. Also, we note as a distinctive element, that unlike the *Nunn* case, there was no showing of any instruction to the mother to let no one else come into the room.

We therefore conclude that in view of the age of the child involved, the mother had the right to waive the requirement of a search warrant of a room in her house occupied by her minor child of 15 years of age. In her distress, she had called for help from the police, in an effort to help control her child and prevent him from being involved in more serious problems. Can we say that a mother with a child of 10 or 11 or 12 or 13 or 14 or 15 has no authority over the room occupied by her child in her home? Can we say that the mother has no right to enter that room and to admit others to the room under facts such as we have in the present case? We believe that to come to that conclusion would be absurd and that a line should be drawn at some reasonable stage. It seems reasonable to adopt the standard set by the Illinois legislature, in declaring that a child of 18 is of age. The obligations of the parent continue so long as a child is a minor.

For the reasons stated, therefore, we believe that the consent of the mother to the search of the room in her home occupied by the child of 15 was valid, and that the order of the trial court should, therefore, be sustained.

The judgment of the Circuit Court of Kankakee County is, therefore, affirmed.

Affirmed.

SCOTT and STENGEL, JJ., concur.