THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* RICHARD D. SHAFFER *et al.*, Defendants-Appellees.

Fifth District   No. 82—53

Opinion filed December 14, 1982.

William C. Evers III, Assistant State's Attorney, of Collinsville, for appellant.

Michael J. Reagan and Kevin C. Kaufhold, both of Kassly, Bone, Becker, Dix & Tillery, P.C., of Belleville, for the People.

JUSTICE JONES delivered the opinion of the court:

In this appeal brought by the State we consider the correctness of the trial court's ruling in granting the motion of defendants, Richard Shaffer and Teresa Shaffer, to suppress evidence seized from their residence.

At the hearing on defendant's motion to suppress, four witnesses testified: defendant Richard Shaffer and the three policemen involved in the search of defendants' residence. Officer Simon of the Collinsville Police Department testified that on August 13, 1981, at about 4 p.m. he noticed three large plants identified, as marijuana growing in the backyard of defendants' residence. At that time no one was at home. Officer Simon checked the residence periodically during the remainder of the afternoon to see whether the resident had returned home. Having determined sometime after 6 p.m. that the resident had returned, Officer Simon, together with Sergeant Trucano and Officer Knapp, went to defendants' residence at about 6:20 p.m. Officer Knapp watched the rear of the house, Officer Simon went to the backyard of the residence to be sure the marijuana plants were still in the garden and then went to the front door of the residence, and Sergeant Trucano went directly to the front door. When Officer Simon "walked up on the porch," he said, "the Sergeant was already inside."

Defendant Richard Shaffer, the first witness to testify, stated that he first observed two police officers in the house when he came into the "front room" of the rented residence. He said,

> "I was in the kitchen with my wife fixing supper, and my younger brother came in the house, and he came in a hurry saying that the police officers was [sic] coming in the house. And I walked in the front room and they was [sic] in the front room already."

He said that there were four other persons in the "front room," that is, the living room, at the time: Scott Shaffer, who was defendant Richard Shaffer's younger brother but did not live at defendants' residence, two of Scott's friends, and defendant's brother-in-law. Defendant testified that Scott "came as the police officers arrived to [sic] the

house, he came into the house and they followed him in." Scott's friends had, he said, arrived earlier. Defendant testified that his brother and brother-in-law were "frequent visitors" to his house and that he had never prevented his brother from inviting friends into defendants' home. Defendant Richard Shaffer had not consented to the officers' entry into the residence.

Sergeant Trucano testified that he had knocked on the front door of the residence and that defendant Richard Shaffer's younger brother had come to the door and had told him he could come in. The front door leads into the living room of the house. The witness said that defendant Richard Shaffer was in the living room, that his wife was in the kitchen cooking, that she came into the living room and that he explained the "circumstances" to defendant Richard Shaffer. This colloquy between the witness and defendants' attorney followed:

"Q. [Defendants' attorney] Okay. And then did you conduct a search?

A. I asked him if I could look around.

Q. And what did he say?

A. He agreed, said yes.

Q. And the search you conducted was inside the house, was it not?

A. Yes.

Q. Okay. And what did you find?

A. I didn't find anything. Officer Knapp [who testified that he had come in the house through the back door after having been called by Sergeant Trucano] found some cannabis alongside of the chair.

Q. Okay. And you asked Mr. Rick Shaffer if you could look around and what exactly did he reply to you?

A. Best of my knowledge he said go ahead.

Q. Are you positive about that or are you speculating?

A. I'm only saying what I can remember. That's what I— what I think happened.

Q. Okay. And you didn't have a search warrant at that time?

A. No, I didn't."

The witness testified subsequently on cross-examination by the State that defendant's younger brother had come to the door and opened it, that when the witness entered the house defendant Richard Shaffer walked into the living room, that no one had asked him if he had a warrant and that he had explained to defendant Richard Shaffer "that he had cannabis growing in the garden portion of his yard at the rear." The witness then testified as follows in response to further ques-

tions propounded by the State:

"Q. [Assistant State's Attorney] And what did he say?
A. He denied it.
Q. He said—
A. Denied that he had anything to do with it.
Q. All right. Do you recall exactly what he said?
A. No, sir.
Q. All right. And then is that when you asked him if you could look around?
A. Yes.
Q. And the best of your recollection, his exact words were go ahead?
A. Yes."

On examination by the court Sergeant Trucano stated that when he entered the residence he did not know who lived there but that he recognized defendant Richard Shaffer when defendant began questioning the sergeant as to why he was there. The witness said he had known "all the Shaffer boys since they were youngsters." The witness was not able to recall Scott Shaffer's first name but did recall that he worked as a cook at McDonald's.

The trial court ordered the evidence seized from the interior of the house suppressed but denied defendants' motion to suppress the cannabis plants taken from the backyard of defendants' residence. In the order, entered December 29, 1981, the trial court found in part:

"3) That there was no consent by the owner or anyone with actual authority to enter the house. It was stated by the police officer at the hearing that he knew the person that let him in and had reason to believe that he did not, in fact, live there. There was further an indication in the testimony that the policeman's entry was right behind the entry of the person who allegedly gave authority [*sic*].

4) That if the entry was without consent, it is not cured by any purported consent to search given by the owner once the police have improperly entered onto the premises."

At a hearing held on January 19, 1982, the trial court granted defendants' motion *in limine* concerning evidence obtained pursuant to the search of the residence. On January 27, 1982, the State filed a notice of appeal with respect to both orders. Thus, the State appeals not only the order granting defendants' motion to suppress evidence seized from their residence but also the order granting defendants' motion *in limine*, likewise concerning evidence obtained pursuant to the search of the residence. Defendants have raised no question as to our jurisdic-

tion to entertain an interlocutory appeal by the State with respect to an order granting a motion *in limine*. However, in view of the disposition we make in this case as to the order granting the motion to suppress, we need not consider either the order granting the motion *in limine* or our jurisdiction to review it.

Contrary to the State's position, defendants contend that Scott Shaffer, as a "mere visitor," lacked authority to give "valid consent to enter the house to the police." Defendants have not at any time denied that Scott Shaffer opened the door of their residence and allowed Sergeant Trucano to enter. Nor have they claimed at any time that Scott Shaffer's consent to entry by the police was in any way involuntary. The trial court's ruling as to the cannabis found outside the residence is not disputed here.

In *People v. Bean* (1981), 84 Ill. 2d 64, 69-70, 417 N.E.2d 608, 611, the supreme court recently discussed third-party consents to warrantless entries:

"We agree that generally an arrest warrant is the desired means by which an individual's right to privacy is protected. (*Payton v. New York* (1980), 445 U.S. 573, 590, 63 L. Ed. 2d 639, 653, 100 S. Ct. 1371, 1381-82; *McDonald v. United States* (1948), 335 U.S. 451, 453, 93 L. Ed. 153, 157, 69 S. Ct. 191, 192.) However, when voluntary consent is given to enter one's residence and an arrest is effected based on probable cause, the suspect's rights under the fourth amendment are not violated, even in the absence of exigent circumstances. The standard for valid consent applied by the Supreme Court in a variety of circumstances is whether that consent is voluntarily given. (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 248-49, 36 L. Ed. 2d 854, 875, 93 S. Ct. 2041, 2058-59; *Bumper v. North Carolina* (1968), 391 U.S. 543, 548, 20 L. Ed. 2d 797, 802, 88 S. Ct. 1788, 1791. See *Johnson v. United States* (1948), 333 U.S. 10, 13, 92 L. Ed. 436, 440, 68 S. Ct. 367, 368-69.) When a warrantless entry is justified by voluntary consent, that consent need not be given by defendant; it may be obtained from a third party who has control over the premises. *United States v. Matlock* (1974), 415 U.S. 164, 171, 39 L. Ed. 2d 242, 249-50, 94 S. Ct. 988, 993; *People v. Heflin* (1978), 71 Ill. 2d 525, 541."

In *United States v. Turbyfill* (8th Cir. 1975), 525 F.2d 57, the defendant was the sole tenant of a residence. When police officers went to the residence to question him about a counterfeiting operation, a person who had been staying in the house for several weeks and had "the run of the house" allowed police to enter defendant's residence,

whereupon the officers found marijuana in plain view in a shoe box on a table. The court ruled that the officers had the right to be in the position from which they saw the marijuana, describing the person who had admitted the officers as "an occupant of indefinite duration rather than a casual visitor." The court quoted from *United States v. Matlock* as follows:

" 'When the prosecution seeks to justify a warrantless search by proof of voluntary consent it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.' " (525 F.2d 57, 59.)

The court held that the person who had admitted the officers was authorized to allow others to enter the premises.

Of *Turbyfill* Professor LaFave observes:

"Finally, note must be taken of a case which is quite different *** namely, where the guest is actually present inside the premises at the time of the giving of the consent and the consent is merely to a police entry of the premises into an area where a visitor would normally be received. There is sound authority that, at least when the guest is more than a casual visitor and 'had the run of the house,' his lesser interest in the premises is sufficient to render that limited consent effective." (2 LaFave, Search and Seizure sec. 8.5(e), at 759 (1978).)

In *Turbyfill*, as in the instant case, the defendant was on the premises at the time the guest gave consent to police to enter an area where a visitor would normally be received. Although Scott Shaffer was not "an occupant of indefinite duration," as was the guest in *Turbyfill*, neither was he merely a "casual visitor." He was the brother of defendant Richard Shaffer and a frequent visitor who had never been prevented from inviting friends into defendant's home. Under the circumstances we think that Scott Shaffer had sufficient relationship to the premises to allow others to enter and, hence, had actual authority to permit police to enter an area where a visitor would normally be received. Thus, the entry into defendants' residence by police was not unlawful. There is nothing in the record to suggest that defendant Richard Shaffer's subsequent consent to search was involuntarily given to the police. Therefore the trial court improperly granted defendants' motion to suppress evidence seized during the search of defendants' residence.

Reversed.

HARRISON, P.J., and KASSERMAN, J., concur.