THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DONALD SEIDEL, Defendant-Appellant.
Third District   No. 82—349

Opinion filed June 9, 1983.

STOUDER, P.J., dissenting.

Robert Agostinelli and Frank W. Ralph, both of State Appellate Defender's Office, of Ottawa, for appellant.

Gary L. Spencer, State's Attorney, of Morrison (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:
Following a bench trial in the circuit court of Whiteside County,

the defendant, Donald Seidel, was found guilty of unlawful possession of cannabis and unlawful possession of a controlled substance (LSD) in violation of section 4(d) of the Cannabis Control Act (Ill. Rev. Stat. 1979, ch. 56½, par. 704(d)) and section 402(b) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1402(b)), respectively. Defendant was sentenced to serve 30 days in the county jail and two years on probation. He appeals his convictions. We affirm.

On June 24, 1981, Officer Pete Zolli of the Rock Falls police department was patrolling the neighborhood of 601 Third Avenue in Rock Falls, where defendant resided with his grandmother. Around 4:04 p.m., Zolli observed the defendant as he met another male, later identified as Mike Bushaw, at the rear door of the residence. A bag containing what appeared to the officer to be cannabis was exchanged during the encounter.

Bushaw appeared to have seen Zolli's car which was partially concealed by a garage. Bushaw got into his car and drove off. Zolli followed for several blocks. At one point Bushaw hesitated as if to throw something from the car as he proceeded down an alley. Bushaw ran a stop sign and was ultimately stopped and given a traffic warning by Zolli. Zolli then returned to the alley; and he located, near the point where Bushaw had hesitated, a bag which was later determined to contain 13 grams of a variety of cannabis known as "Mexican Sensimillion."

Zolli returned to the defendant's residence where he met Mr. and Mrs. Thicksten, the defendant's grandparents. The Thickstens stated that they owned the residence and that the defendant occupied a room on the second floor. Officer Zolli asked whether the defendant rented the room, and Mrs. Thicksten stated that he did not. Mr. Thicksten said nothing. After explaining that he suspected that the defendant may have been involved in a recent cannabis transaction, Zolli requested permission to search the defendant's room. Mrs. Thicksten picked up a key and led the officer to the defendant's room, opened the door and allowed him to enter. Officer Zolli observed a mattress on the floor with a plant-like substance on it, both loose and in a plastic bag. On the floor beside the mattress were plastic bags and bottles containing capsules. Zolli told Mrs. Thicksten that he would be coming back later to do a more thorough search of the room if she would permit it.

Zolli returned to the police station and consulted with the State's Attorney concerning the investigation. That evening, Zolli returned to the Thicksten residence with Lieutenant Mangan. Mrs. Thicksten

signed a consent-to-search form and gave the officers the key to the defendant's room. The officers proceeded upstairs, entered the room and gathered various containers of material, later determined to be cannabis, weighing just under 17.3 grams.

Around 8 p.m., while the search of the defendant's room was underway, the defendant entered the room. The defendant was read his *Miranda* rights, he waived them, and agreed to talk to the officers. Defendant asked what was the fine for having 28.8 grams of cannabis. Zolli said that was a Class A misdemeanor. The defendant admitted that the material found in the room belonged to him as did the "Mexican Sensimillion," which Zolli had retrieved from the alley after chasing Mike Bushaw earlier in that day.

The defendant was taken to the Rock Falls police station. A search of the defendant's person revealed a plastic bag containing a piece of white, perforated paper located between the laces and the tongue of his left tennis shoe. The defendant again waived his *Miranda* rights and admitted that the paper contained LSD. The defendant was charged in two counts with unlawful possession of cannabis and LSD. He pleaded not guilty and filed a motion to suppress evidence based on illegal search and seizure.

At the suppression hearing, Mrs. Thicksten stated that the defendant had come to live with her about six months earlier because of family problems at home. At the time of the search, defendant was one month over age 18. According to Mrs. Thicksten, the defendant paid rent of $10 per week. In addition to the defendant's room, Mrs. Thicksten said she rented out two other rooms on the second floor of her house. Although Mrs. Thicksten neither cleaned the rooms nor did the laundry for her guests, she had, on two or three occasions, gone into the defendant's room to remove various items of personal belongings that she had stored there. Generally, though, she would ask the defendant to get for her what she needed from the room. The particular room occupied by the defendant had not been rented out prior to the defendant's arrival in the household. Mrs. Thicksten's renters generally locked their doors to their rooms; however, the defendant had never specifically told Mrs. Thicksten not to enter his room.

Based upon the testimony of Mrs. Thicksten and Officer Zolli, the trial court made findings of fact and concluded that Mrs. Thicksten "had (a) common authority over the premises, and-or (b) she possessed sufficient relationship to the premises sought to be inspected to give her own consent." Defendant's motion to suppress was denied accordingly.

The matter proceeded to trial, the defendant was found guilty,

convicted, and sentenced as aforesaid. In this appeal, defendant raises two issues: (1) whether Mrs. Thicksten had authority to consent to a warrantless search of the defendant's locked bedroom; and (2) whether the State proved beyond a reasonable doubt that the defendant possessed more than 30 grams of cannabis where the evidence established that he had lesser quantities in his possession on two separate occasions.

One of the exceptions to the constitutional requirement that law enforcement officials obtain a valid search warrant prior to conducting a search of private property is that the search be conducted pursuant to the voluntary consent of a person with authority to waive the warrant requirement and authorize the search. The defendant himself need not have given consent if the prosecution proves "that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." (*United States v. Matlock* (1974), 415 U.S. 164, 171, 39 L. Ed. 2d 242, 250, 94 S. Ct. 988, 993.) Whether a third party possessed the requisite authority over or relationship to the premises sought to be searched is clearly a question of fact. Some guidance to the decision-making process can be found, however, in footnote 7 of the *Matlock* opinion. There the Supreme Court states:

> "Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, [citations] but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." (415 U.S. 164, 171 n.7, 39 L. Ed. 242, 250 n.7, 94 S. Ct. 988, 993 n.7.)

Illinois courts, faced with third-party consent issues, have attempted to resolve them by applying a "mutual use" or "common authority" test. (*People v. Stacey* (1974), 58 Ill. 2d 83, 317 N.E.2d 24; *People v. Heflin* (1978), 71 Ill. 2d 525, 376 N.E.2d 1367; *People v. Johnson* (1974), 23 Ill. App. 3d 886, 321 N.E.2d 38.) Both *Matlock* and *Stacey* involved searches of bedrooms shared by the defendants and their respective wives (*Matlock* involved a *de facto*, as opposed to legal, relationship). In both cases, obviously, the wives, as co-inhabitants of the bedrooms, could be said to have had mutual use of the premises.

Based on the conjugal relationships existing between the defendants and the persons consenting to the searches in these cases, it could be generally stated that the persons consenting had joint access or control for most purposes over the premises searched.

In *Heflin*, the defendant's brother Jon turned over to authorities letters found in the defendant's bedroom. The defendant had requested that Jon collect the defendant's personal belongings from the room and store them in Jon's house. The defendant did not mention the letters or give specific instructions forbidding others to have access to them. On review, the court found that, under the *Matlock* test, Jon had "common authority" over the letters.

In *Johnson*, the appellate court applied the "common authority" test to a warrantless search of the defendant's bedroom which was authorized by his mother. The defendant was married, but not living with his wife. He occupied a bedroom in his parents' house. The room was "freely accessible to the mother at all times. She cleaned it every weekend and changed the linen." (23 Ill. App. 3d 886, 892, 321 N.E.2d 38, 43-44.) There was no indication that the door to the room was ever locked or that the defendant's mother had been instructed not to enter the room. On review, the court determined that these facts were sufficiently distinct from *People v. Nunn* (1973), 55 Ill. 2d 344, 304 N.E.2d 81, *cert. denied* (1974), 416 U.S. 904, 40 L. Ed. 2d 108, 94 S. Ct. 1608 (a pre-*Matlock* decision in which an "expectation of privacy" test was determined applicable to third-party consent-to-search cases), to sustain the trial court's denial of defendant's motion to suppress.

Although *Nunn* can no longer be said to state the proper constitutional test for third-party consent cases, the facts therein should nonetheless be analogized to those presently before us, inasmuch as the *Stacey* court has made it clear that the result of *Nunn* would have been the same— *i.e.*, evidence obtained as a consequence of warrantless search based on third-party consent should have been suppressed—regardless of which tests were applied. In *Nunn*, defendant resided in a bedroom and adjoining kitchenette located within his mother's house. Defendant paid no rent, at least not on a regular basis. Defendant was age 19 on the date of the search. Ten to 14 days prior to the search, defendant left the residence, locked the door to his quarters and instructed his mother to allow no one to enter the room. Defendant's mother did not object to his request that she not open the locked door. Based on these facts, the *Nunn* court held that the defendant had an expectation of privacy and that it was reasonable. Defendant had not waived his fourth amendment rights, and his

mother had no authority to do so. Thus, the warrantless search of defendant's rooms was held unreasonable, requiring suppression of the fruits of that search.

The *Stacey* court reanalyzed the *Nunn* factual setting under the *Matlock* "mutual use" test and concluded that, because the mother in *Nunn* had been specifically instructed not to enter the locked rooms and because she had previously been permitted to enter it only for cleaning purposes and because the rooms were otherwise set aside for the defendant's exclusive use, the mother "did not have 'mutual use' of the defendant's room, nor could it be said that the mother 'generally had joint access or control for most purposes' of the room." *People v. Stacey* (1974), 58 Ill. 2d 83, 89, 317 N.E.2d 24, 27.

In *People v. Nolan* (1978), 59 Ill. App. 3d 177, 375 N.E.2d 445, the court reversed an order of suppression of evidence obtained during a warrantless search of defendant's bedroom located in his parents' home. Defendant's mother had consented to the search. The court stated that "there is no question that Mrs. Nolan had authority to consent to a search of her son's bedroom." Unlike *Nunn*, the facts of *Nolan* disclosed that the defendant did not lock the door to his room and had not instructed his parents to keep anyone out of it. Furthermore, defendant acknowledged that his parents had access to the room. 59 Ill. App. 3d 177, 187, 375 N.E.2d 445, 453.

In *In re Salyer* (1977), 44 Ill. App. 3d 854, 358 N.E.2d 1333, this court considered the validity of a consent to search by a juvenile respondent's mother. The minor's bedroom was occupied exclusively by him. At the time of the search, the minor was age 15. There was no evidence that he had instructed his mother not to enter the room. The minor cleaned the room himself and removed laundry from it. The minor kept the room locked with a combination lock. The combination was known only to him. There was no formal arrangement for rent, although the minor has occasionally contributed to household expenses. The minor's mother would enter the bedroom after first knocking, and then only for the purpose of asking her son a question. During the three-month period preceding the search, the minor had left the door to the room unlocked. On these facts, the trial court denied the juvenile respondent's motion to suppress, finding that the minor's mother retained ultimate authority over the premises such that her consent to search was valid. On appeal, this court affirmed, finding that the mother had an implied "right to exert parental authority and control over a minor son's surroundings and that such implied right to control obviously includes a room in the home of the mother." (44 Ill. App. 3d 854, 859, 358 N.E.2d 1333, 1336.) This court further

found that the mother had "at least common authority" as to the minor's bedroom. Finally, the court distinguished the case from *Nunn* by noting that there had been no showing of any instruction to the mother to keep others from entering the room.

Without attempting to analyze every reported third-party consent case decided in Illinois, we believe that we nonetheless should consider the recent Fifth District decision in *People v. Shaffer* (1982), 111 Ill. App. 3d 1054, 444 N.E.2d 1096, before explaining our resolution of the issue in the present case. In *Shaffer*, the defendant's younger brother, who did not live in the defendant's residence, had admitted police officers into the defendant's house. A warrantless search of the house disclosed cannabis by a chair in the living room. Defendant's motion to suppress the cannabis was allowed by the trial court on grounds that the defendant's brother lacked authority to consent to the officers' entry in the house. On appeal, the court reversed, finding that the defendant's brother was "a frequent visitor who had never been prevented from inviting friends into defendant's home. Under the circumstances we think that Scott [the defendant's brother] had *sufficient relationship to the premises* to allow others to enter and, hence, had actual authority to permit police to enter an area where a visitor would normally be received." (Emphasis added.) 111 Ill. App. 3d 1054, 1059, 444 N.E.2d 1096, 1099.

Our research of Illinois case law indicates that *Shaffer* is the first reported decision in which third-party consent has been determined on the basis of "other sufficient relationship to the premises" rather than on a finding of "mutual use" or "common authority." The trial court's finding in that instant case comports with *Shaffer* to the extent that it recognizes that the *Matlock* "common authority" analysis, generally applicable where the relationship between the defendant and the consenting third party is particularly close, may be considered as an alternative to the "other sufficient relationship" analysis under proper circumstances.

■ The facts of the instant case relevant to our determination are these: The defendant was over age 18 at the time of the search. He was related to the person giving consent to search as a grandson. The home in which defendant resided was also occupied by defendant's grandparents who owned it. The defendant kept his bedroom door locked; however, the defendant's grandmother had a key to the defendant's bedroom door. The grandmother stored personal belongings in the room. She had entered the room on two or three occasions during the six-month period prior to the search without consent. During these entries, the grandmother had removed certain of her per-

sonal items. There was no formal rental agreement between the defendant and his grandmother. Finally, the defendant had not instructed his grandmother to keep others out of the room.

In our opinion, these facts present a situation in which "other sufficient relationship to the premises" has been established sufficient to sustain the trial court's denial of defendant's motion to suppress. Unlike *Nunn*, the defendant's bedroom was not used "exclusively" by him. It is uncontroverted that his grandmother used it for storing furniture and clothes. There is no indication of record that the defendant objected to the fact that on occasion his grandmother had entered the room to retrieve her stored belongings; and of course there is no indication that the defendant specifically instructed his grandmother to keep others out of the room. Even though at trial Mrs. Thicksten referred to the defendant as a "roomer," we find sufficient support in Officer Zolli's testimony for the trial court's conclusion that the defendant's relationship to his grandmother was not merely that of landlord-tenant. We find, as did the trial court, that under the circumstances presented, Mrs. Thicksten retained a sufficient relationship to the premises—*i.e.*, defendant's bedroom—so that it was reasonable to recognize that the grandmother had the right to permit the inspection of the room in her own right and that the defendant had assumed the risk that she might permit the room to be searched. Mrs. Thicksten's consent to the officers' warrantless searches constituted a valid waiver of the defendant's fourth amendment rights. We affirm the trial court's denial of defendant's motion to suppress.

■ Finally, we turn to defendant's second issue on appeal. Without citation to any authority for his theory, defendant asserts that his conviction for possession of more than 30 grams of cannabis cannot be sustained absent proof that he simultaneously possessed the bag of cannabis recovered from the alley and that which was found in his bedroom hours later. We agree that in order to convict a defendant for criminal possession of a designated amount of a substance, it must be established beyond a reasonable doubt that the total amount was possessed at some time, rather than proving merely that lesser amounts were possessed at various times over some extended period and cumulated by the prosecution in order to obtain a conviction of a greater degree. Proof of the element of simultaneity of possession may be by uncontroverted circumstantial evidence where, as here, lesser quantities of the substance are gathered by the police from two separate locations and combined to form the basis for a single conviction.

■ Around 8 p.m., the defendant admitted that he owned both the

bag recovered from the alley following Officer Zolli's encounter shortly after 4 p.m. with Mike Bushaw and the substance gathered from defendant's bedroom that evening. Zolli testified that the defendant had voluntarily inquired of him, upon defendant's arrival to his bedroom, what the fine was for possession of 28.8 grams of cannabis. Only 17.2 grams was gathered from the room during the officers' search at 8 p.m. A reasonable inference to be drawn from the evidence was that the defendant himself impliedly acknowledged that he had simultaneously possessed the bag found in the alley (13 grams) and the quantity remaining in his bedroom (17.2 grams) at 4:04 p.m. when the defendant was observed handing a bag to Bushaw. Although the defendant was not present in the bedroom on either occasion when his grandmother admitted the officers into the room, we need not speculate that it was after the transaction with Bushaw that the defendant acquired and deposited within his bedroom some or all of the cannabis found therein by the officers. The State's uncontradicted circumstantial evidence of simultaneous possession of more than 30 grams of cannabis, together with reasonable inferences based on the evidence, was sufficient to support the defendant's conviction.

For the reasons stated, we affirm the defendant's convictions.

Affirmed.

ALLOY, J., concurs.

PRESIDING JUSTICE STOUDER, dissenting:

I respectfully disagree with the reasoning and result reached by my colleagues. In my opinion consent for the search was not given by a person having the right or authority to consent to the search and hence the search and seizure made without valid consent was constitutionally impermissible and the evidence seized should have been suppressed.

The general rule is that to conform to constitutional requirements, a search must be based on a search warrant unless the search comes within one of the recognized exceptions to the warrant requirements. (*Stoner v. California* (1964), 376 U.S. 483, 11 L. Ed. 2d 856, 84 S. Ct. 889.) Consent, of course, of a party having the right and authority to permit a search, is one of the recognized exceptions. Ordinarily the consent to a search is that of the person charged with being in possession of the property, but consent may be given by a third person under proper circumstances. *United States v. Matlock* (1974), 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988.

I believe the majority has misinterpreted and misapplied the cases which it relies on to support its result. In my opinion *People v. Nunn* (1973), 55 Ill. 2d 344, 304 N.E.2d 81, and *In re Salyer* (1977), 44 Ill. App. 3d 854, 358 N.E.2d 1333, are controlling authorities in support of the proposition the third party purporting to consent to the search involved in this case had no authority to consent to the search.

The facts in *People v. Nunn* are in my opinion legally indistinguishable from those in the instant case. The *Nunn* decision was reaffirmed in *People v. Stacey* (1974), 58 Ill. 2d 83, 317 N.E.2d 24, after re-examination in light of the *Matlock* decision. In *Stacey*, the court emphasized that part of footnote 7 to the *Matlock* opinion which stated " '*** but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.' " (58 Ill. 2d 83, 88, 317 N.E.2d 24, 27.) As in the *Nunn* case, the facts disclose the grandmother did not have "mutual use" or "joint access or control for most purposes." 58 Ill. 2d 83, 89, 317 N.E.2d 24, 27.

In *In re Salyer* (1977), 44 Ill. App. 3d 854, 358 N.E.2d 1333, the mother's consent to the search of her minor son's locked room was approved not because of her actual mutual use or joint and general access but substantially because of her role and statutory duties and responsibilities as mother. Numerous statutes are cited and quoted which according to the court, granted her paramount authority over all premises occupied by her minor children. In relying on the minority of the son and the statutory duties to support the authority of the third party to consent to the search, the conclusion is inescapable that absent the relation of parent and minor child the authority to consent to the search would have been lacking. In this case the defendant was not a minor and the third person granting the consent was not a parent nor standing in the relationship of parent.

The majority has cited and discussed *People v. Shaffer* (1982), 111 Ill. App. 3d 1054, 444 N.E.2d 1096, and has suggested it offers some support for its decision. I find the *Shaffer* opinion of little assistance in the decision of the case. So far as the opinion is concerned, some of the language of third-party consent searches appear, but how such language affects or is affected by the underlying facts is confusing. The opinion holds that a younger brother of the defendant had the right to invite a police officer into the living room of the defendant's house, but nowhere does the opinion suggest the younger brother con-

sented to a search of the living room or any other portion of the premises. Additionally, the facts suggest the defendant himself was also present in the living room and he consented to a search of the premises. However the facts in *Shaffer* are viewed, they are substantially different from those in *Nunn*, *Salyer* and in the instant case and accordingly, may not by way of analogy support the propriety of the consent in the instant case.

In summary, I believe the cases require the conclusion that the person granting the consent in this case did not have the authority to do so and consequently the motion to suppress the evidence should have been granted.